**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ELI ADAMS**, an individual; and <br> **REYNA BALBOA**, an individual, <br><br>              **Plaintiffs**, <br><br> v. <br><br> **KAELEN SMITHSON**, an individual, <br><br>              **Defendant.** | **Civil Action No.:** _____ <br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs, Eli Adams and Reyna Balboa who file this Complaint against Defendant, Kaelen Smithson respectfully show the following:

**I.**

## NATURE OF THE CASE

1. Plaintiffs, Eli Adams and Reyna Balboa, entered into an independent contract agreement with Defendant, Kaelen Smithson, to assist with development of their highly popular video game "Forsaken," playable on the Roblox platform. Smithson was required to, and did, execute a standard Non-Disclosure and Confidentiality Agreement (the "Confidentiality Agreement") before being allowed to access highly confidential and propriety data.

2. After executing the Confidentiality Agreement and receiving compensation from Adams and Balboa, Smithson reproduced and publicly disclosed thousands of confidential messages and files containing the complete contents of all *Forsaken* development server channels on the Discord communication platform. Because of the highly valuable nature of the information, the disclosing post spread rapidly across the internet. For example, a

single post on the social media platform X (formerly Twitter) sharing these confidential files received approximately 7.3 *million* views.

3. Adams and Balboa seek an injunction to prevent further release and dissemination of this highly valuable information.  Adams and Balboa also seek damages as stipulated in the Confidentiality Agreement.

## II.

## PARTIES

4. Plaintiff, Eli Adams, is an individual domiciled in Lafayette, Louisiana.

5. Plaintiff, Reyna Balboa, is an individual domiciled in Vancouver, British Columbia, Canada.

6. Defendant, Kaelen Smithson, is an individual domiciled in Leduc, Alberta, Canada.

## III.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over Plaintiffs' Defend Trade Secrets Act ("DTSA") claim pursuant to 28 U.S.C. § 1331, because that claim arises under federal law, 18 U.S.C. § 1836.  The district courts of the United States have original jurisdiction of civil actions brought under the DTSA.  18 U.S.C. § 1836(c).  This Court has supplemental jurisdiction over all remaining state-law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal DTSA claim that they form part of the same case or controversy under Article III of the United States Constitution.  All claims arise from the same nucleus of operative facts: Smithson's execution of the Confidentiality Agreement, her access to and systematic export of *Forsaken*'s confidential information and

trade secrets, and her subsequent unauthorized disclosure of that information to third parties.

8.  This Court has personal jurisdiction over Smithson.  First, Smithson expressly consented to litigate in this forum in Section 10 of the Confidentiality Agreement, which provides that "[t]he parties consent to the exclusive jurisdiction of the courts of the State of Louisiana in all disputes arising under or related to this Agreement and waive all objections to the appropriateness of venue."  Second, this Court has personal jurisdiction over Smithson under Louisiana's Long-Arm Statute, La. Rev. Stat. § 13:3201(A)(1), because she transacted business in Louisiana in connection with her work on *Forsaken*.  Third, Smithson caused tortious injury in Louisiana through acts or omissions committed outside the state, La. Rev. Stat. § 13:3201(A)(4).  Fourth, this Court may exercise personal jurisdiction on any basis consistent with the Louisiana Constitution and the United States Constitution.  *See* La. Rev. Stat. § 13:3201(B).

9.  Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, including the performance, breach of Agreement, and damages.  Venue is also proper because Smithson is not a resident of the United States and, pursuant to 28 U.S.C. § 1391(c)(3), may be sued in any judicial district.  Venue is further proper pursuant to the forum-selection clause in Section 10 of the Confidentiality Agreement.

**IV.**

**<u>FACTS</u>**

10. Plaintiffs Adams and Balboa are the owners and managers of the video game *Forsaken*, which is available to play on the Roblox gaming platform.  *Forsaken* is one of the most

popular games on the Roblox platform, achieving peaks of more than one million (1,000,000) concurrent users at any given moment.

11. *Forsaken* generates substantial revenue through in-game purchases, platform-based monetization, and related commercial activities. The game's commercial success depends significantly upon the element of surprise, specifically, the ability to control the timing and manner in which new content, characters, mechanics, maps, patches and events are disclosed to the public.

12. Plaintiffs have invested significant money, labor, and creative effort into developing and maintaining *Forsaken*. Competitors and the general public do not have access to *Forsaken*'s confidential development information, including unreleased content, design decisions, financial data, and internal operations, which constitute valuable trade secrets and proprietary information that Plaintiffs take reasonable measures to protect.

13. To assist with the development, marketing, and management of *Forsaken*, Plaintiffs work with a limited group of developers and contributors. Smithson was one such developer. She was initially retained as a renderer and was eventually promoted to lead renderer, a senior position with broad access to *Forsaken*'s confidential development infrastructure.

14. In that role, Smithson sought and received access to confidential project communications, private Discord development channels, work product, analytics, and other confidential *Forsaken* information.

15. Smithson was not permitted access to any of the core *Forsaken* servers, including the Studio, Code, or Lead Development servers, before executing the Confidentiality Agreement.

16. On October 23, 2025, Smithson executed the Confidentiality Agreement.  Section 1 of the Agreement defined *"Confidential Information"* as :

> …any information received by Recipient in connection with the Project and/or Analytics Access, business affairs, planning, forecasts or intentions; methods of operations, processes, techniques or systems; products, services, or methodologies; trade secrets and intellectual property rights; customers, vendors, employees, and consultants; and financial or other non-public information.

17. The *"Project"* is defined as the Roblox game *Forsaken* and its analytics.

18. Following execution of the Confidentiality Agreement, Smithson was granted access to all of *Forsaken*'s core development servers, including the Studio, Code, and Lead Development servers.  This access was granted in direct reliance upon Smithson's execution of the Confidentiality Agreement and her representations regarding her identity and legal capacity, including her representations as to her age.

19. Under Section 2 of the Confidentiality Agreement, Smithson agreed to: (a) keep the Confidential Information confidential; (b) not use, copy, reproduce, or disclose the Confidential Information to any other person; (c) keep the existence of the Project confidential until its public announcement; (d) not reverse engineer, decrypt, disassemble, decompile, or reconstruct any aspects of Plaintiffs' products containing Confidential Information; (e) take all action reasonably necessary to secure the Confidential Information against theft, loss, or unauthorized disclosure; (f) not make copies of the Confidential Information for any purpose other than the Project; (g) not use the Confidential Information for any purpose other than the Project; and (h) destroy or return Confidential Information upon request.

20. Section 7 of the Confidentiality Agreement provides that in the event of a breach, the breaching party shall pay the greater of the following options for "***each such breach***:"

   a. Fifty Thousand Dollars ($50,000.00); or

   b. the compensation that the recipient received and/or has a claim to receive. Section 7 also expressly authorizes the non-breaching party to seek injunctive relief, without showing or proving any actual damages sustained, in addition to any other available remedies.

21. On or around May 12, 2026, compressed archive files (zip files) containing the complete contents of all *Forsaken* development server channels on the Discord platform were exported and disclosed to third parties, spreading rapidly across the internet. A single post on the social media platform X (formerly Twitter) sharing files Smithson published received approximately 6,400 reposts, 37,000 likes, and 7.3 million views:



22. The leaked logs contain over 10,000 messages taken from multiple servers, which consisted of at least thirty-five (35) separate categories of Confidential Information covered by the Confidentiality Agreement, including:

➢ Character design specifications
➢ Rejected character designs
➢ Character reworks
➢ Pre-release character launch-timing material
➢ Pre-release event specifications
➢ Unshipped event designs
➢ Event monetization strategy
➢ Discussions about UI concepts such as layouts and player icons
➢ Internal Roblox build pipeline architecture
➢ Internal quality assurance methodology
➢ Pre-release art and music workflows
➢ Studio access and permission-elevation methodology
➢ Intellectual property enforcement strategy
➢ Anti-cheat strategy and architecture
➢ Internal marketing analytics
➢ Pre-publication patch notes
➢ Content roadmaps
➢ Music assets and work product
➢ Internal Roblox Place IDs and Universe ID
➢ Internal repository and branch identifiers
➢ External document URLs, including private Google Docs
➢ Roblox Model File (.rbxm) work-product attachments
➢ Live access credentials
➢ Outside contractor payment ledgers
➢ Negotiation terms
➢ Developer identifying information
➢ Personnel deliberations
➢ Financial figures
➢ Contributor personal identifying information
➢ Non-public third-party player data
➢ Non-public security alerts
➢ Intellectual property infringement risk methodology
➢ Internal discussions of intellectual property leaks
➢ Discussions with outside counsel
➢ Other non-public confidential business information

23. The disclosed logs were exported using a third-party software known as "DiscordChatExporter." DiscordChatExporter writes the exporting user's local operating-system time zone in the footer of every export it produces. The footers of every leaked file reflect UTC-7, which corresponds to Mountain Daylight Time, the time zone applicable to Leduc, Alberta, Canada, where Smithson is domiciled. Importantly, Smithson is the only developer utilized by Plaintiffs that is domiciled in that specific time zone.

24. For more than two years prior to the execution of the Confidentiality Agreement, Smithson repeatedly and consistently represented to Plaintiffs and others that she would turn eighteen years of age on September 12, 2025, more than one month before she executed the Confidentiality Agreement.

25. Specifically: on May 15, 2024, and September 5, 2024, Smithson represented that she was turning seventeen in September 2024; on December 18, 2024, she represented that she had turned seventeen; on June 9, 2025, she represented that she was turning eighteen soon; on August 16 and August 28, 2025, she represented that she was turning eighteen in September 2025; on September 12, 2025, she announced that she had turned eighteen; and on February 18, 2026, (approximately four months after signing the Confidentiality Agreement) she again represented that she was eighteen years of age.

26. Plaintiffs executed the Confidentiality Agreement with Smithson in good faith and in reasonable reliance upon these repeated representations that she was an adult at the time of contracting.

27. When directly confronted about her breach of the Confidentiality Agreement, Smithson did not dispute the claim that she had breached the Agreement. Instead, for the first time, she claimed that the Agreement was void or voidable because she was allegedly a minor at the time she executed it.

28. Smithson exported and disclosed *Forsaken*'s Confidential Information with full knowledge of her obligations under the Confidentiality Agreement and with the intent to harm Plaintiffs' business interests or to benefit herself or third parties.

29. The Confidential Information and trade secrets misappropriated by Smithson have already been disseminated publicly across the internet and continue to be accessible and re-shared.

This ongoing exposure causes continuing, compounding harm to Plaintiffs' competitive position in the Roblox gaming market.

30. Disclosure of unreleased character designs, game mechanics, content roadmaps, and strategic business information allows competitors to preempt Plaintiffs' releases and permanently undermine Plaintiffs' first-mover advantage with respect to content that is now public.

31. Smithson has shown no indication that she has taken any steps to recall, destroy, or limit the dissemination of the exported files. To the contrary, her belated and self-serving claim that the Confidentiality Agreement does not apply signals her intent to disclaim any continuing obligation of confidentiality.

**V.**
**FIRST CLAIM FOR RELIEF**
**Breach of Contract**

32. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

33. The Confidentiality Agreement constitutes a valid, binding, and enforceable contract between Plaintiffs and Smithson under all applicable laws.

34. Smithson was not a minor when she executed the Confidentiality Agreement on October 23, 2025, as she had repeatedly represented that she turned eighteen years of age on September 12, 2025, more than one month prior to execution.

35. In the alternative, if Smithson was in fact an unemancipated minor at the time of execution, she is precluded from seeking rescission by La. Civ. Code art. 1924, which expressly provides that when the other party reasonably relies on the minor's representation of majority, the contract may not be rescinded. Plaintiffs reasonably relied on Smithson's

repeated, detailed, and unambiguous representations spanning more than two years that she had turned eighteen on September 12, 2025.

36. Plaintiffs have fully performed all of their obligations under the Confidentiality Agreement.

37. Smithson materially breached the Confidentiality Agreement by: (a) copying the complete contents of all private *Forsaken* development server channels using third-party export software; (b) disclosing that information to third parties without authorization; and (c) failing to take reasonable measures to secure the Confidential Information against unauthorized disclosure.

38. Pursuant to Section 7 of the Confidentiality Agreement, Plaintiffs are entitled to stipulated damages equal to the greater of (a) $50,000.00 per breach, or (b) the compensation Smithson received or has a claim to receive for each disclosure.

39. In the alternative, Plaintiffs are entitled to recover actual damages, including loss of competitive advantage, lost revenue, and costs incurred in mitigating the breach, in amounts to be proven at trial.

40. Pursuant to Section 7 of the Confidentiality Agreement and Fed. R. Civ. P. 65, Plaintiffs are entitled to injunctive relief to prevent further dissemination of the Confidential Information.

**VI.**

**<u>SECOND CLAIM FOR RELIEF</u>**
**Trade Secret Misappropriation**

41. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

42. The Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, provides that an owner of a trade secret that is misappropriated may bring a civil action if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce. *See* 18 U.S.C. § 1836(b)(1). The district courts of the United States have original jurisdiction over such actions.

43. Information reproduced and disclosed by Smithson satisfy the definition of trade secrets under the DTSA, including Internal Roblox Place IDs and Universe ID, internal repository and branch identifiers, Roblox private server share-Code URLs, rejected design decisions, internal marketing analytics, intellectual property infringement risk methodology, anti-cheat strategy and architecture, internal build pipeline architecture, internal quality assurance methodology, live access credentials, outside contractor payment ledgers and negotiation terms, and non-public third-party player data.

44. Plaintiffs have taken reasonable measures to maintain the secrecy of these trade secrets, including limiting access on a strict need-to-know basis, requiring all developers to execute confidentiality agreements as a condition of access, and maintaining private, access-controlled communication servers.

45. These trade secrets derive significant independent economic value from not being generally known. *Forsaken* competes against numerous other games on the Roblox platform, and Plaintiffs derive substantial competitive advantage from maintaining the confidentiality of unreleased content, technical architecture, financial data, and strategic plans.

46. *Forsaken* is developed, maintained, marketed, and accessed in interstate and international commerce, satisfying the commerce nexus requirement of 18 U.S.C. § 1836(b)(1).

47. Smithson misappropriated Plaintiffs' trade secrets by disclosing them without Plaintiffs' express or implied consent, at a time when she knew or had reason to know that her knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit its use, specifically, her obligations under the Confidentiality Agreement and her position of trust as a *Forsaken* developer.

48. Further, Smithson also misappropriated Plaintiffs' trade secrets by acquiring Plaintiffs' trade secrets by improper means, including by using unauthorized export software to systematically copy data beyond any legitimate purpose, and/or disclosing or using the trade secrets with knowledge or reason to know that they were acquired through improper means.

49. In the alternative, Smithson misappropriated Plaintiffs' trade secrets by disclosing information derived through a person who used improper means, or through a person who owed a duty to Plaintiffs to maintain secrecy.

50. As a direct and proximate result of Smithson's misappropriation, Plaintiffs have suffered actual damages in an amount to be proven at trial. Alternatively, Plaintiffs are entitled to damages measured by Smithson's unjust enrichment in an amount to be proven at trial.

51. Any further reproduction or disclosure of Plaintiffs' trade secrets will cause irreparable harm to Plaintiffs. Plaintiffs are entitled to injunctive relief to prevent any actual or threatened misappropriation, including affirmative actions to protect the trade secrets.

52. Smithson's conduct constituted willful and malicious misappropriation. Plaintiffs are therefore entitled to exemplary damages in an amount not more than two (2) times the damages awarded and an award of reasonable attorneys' fees under 18 U.S.C. § 1836(b)(3)(C) and 18 U.S.C. § 1836(b)(3)(D).

## VII.

### THIRD CLAIM FOR RELIEF
### Trade Secret Misappropriation Per Louisiana Law

53. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

54. This claim is asserted under the Louisiana Uniform Trade Secrets Act ("LUTSA"), La. Rev. Stat. §§ 51:1431–51:1439, as a state-law claim over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  The DTSA does not preempt LUTSA or any other state trade secret remedy.  18 U.S.C. § 1838; La. Rev. Stat. § 51:1431, *et seq*.

55. Specific information reproduced and disclosed by Smithson satisfy the definition of trade secrets under La. Rev. Stat. § 51:1431(4), including Internal Roblox Place IDs and Universe ID, internal repository and branch identifiers, Roblox private server share-Code URLs, rejected design decisions, internal marketing analytics, intellectual property infringement risk methodology, anti-cheat strategy and architecture, internal build pipeline architecture, internal quality assurance methodology, live access credentials, outside contractor payment ledgers and negotiation terms, and non-public third-party player data.

56. Plaintiffs have taken reasonable measures to keep this information secret, and the information derives independent economic value from not being generally known to other persons who can derive economic value from the disclosure or use of the information.  Such information is not otherwise readily ascertainable through proper means.

57. Plaintiff reasonably maintains the secrecy of *Forsaken*'s confidential information, including by limiting its disclosure on a need-to-know basis and by requiring developers to sign confidentiality agreements.

58. Smithson misappropriated Plaintiffs' trade secrets by disclosing them without Plaintiffs' express or implied consent at a time when she knew or had reason to know that her knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain their secrecy and limit their use.

59. In the alternative, Smithson misappropriated Plaintiffs' trade secrets by acquiring them through improper means and/or by disclosing or using trade secrets with knowledge or reason to know that they were derived through a person who used improper means or who owed a duty to Plaintiffs to maintain their secrecy.

60. As a direct and proximate result of Smithson's misappropriation, Plaintiffs have suffered actual damages in amounts to be proven at trial, or alternatively unjust enrichment damages.

61. Plaintiffs are entitled to injunctive relief under La. Rev. Stat. § 51:1432 to prevent any actual or threatened further disclosure or use of Plaintiffs' trade secrets.

62. Further, Smithson's misappropriation was willful and malicious, and Plaintiffs are entitled to an award of reasonable attorneys' fees under La. Rev. Stat. § 51:1434.

### VIII.

### <u>FOURTH CLAIM FOR RELIEF</u>
**Detrimental Reliance**

63. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

64. This claim is asserted under Louisiana law, over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

65. This claim is pleaded in the alternative to the extent Smithson contends, or the Court determines, that the Agreement is unenforceable, rescindable, or unavailable as a complete remedy.

66. Louisiana Civil Code article 1967 provides that a party may be obligated by a promise when that party knew or should have known that the promise would induce the other party to rely on it to their detriment, and the other party was reasonable in so relying.

67. Through her repeated representations over more than two years that she was, or was about to become, eighteen years of age, Smithson made clear and unambiguous representations upon which Plaintiffs reasonably relied.

68. In reasonable and justifiable reliance on Smithson's representations, Plaintiffs: (a) executed the Confidentiality Agreement with Smithson; (b) granted Smithson access to all core *Forsaken* confidential development servers; (c) shared highly sensitive trade secrets, financial data, and strategic information with Smithson; and (d) promoted Smithson to lead renderer, granting her broader access and trust.

69. To the extent Smithson attempts to avoid her contractual obligations by claiming minority, enforcement of Plaintiffs' rights is necessary to avoid injustice. Plaintiffs changed their position to their substantial detriment in reliance on Smithson's representations and Smithson should be estopped from asserting minority as a defense.

70. As a direct and proximate result of Plaintiffs' detrimental reliance, Plaintiffs have suffered damages in amounts to be proven at trial.

**IX.**

**FIFTH CLAIM FOR RELIEF**
**Unjust Enrichment**

71. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

72. This claim is asserted under Louisiana law, over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

73. Louisiana Civil Code article 2298 provides that a person who has been enriched without cause at the expense of another person is bound to compensate that person. The remedy is subsidiary and shall not be available if the law provides another remedy. This claim is therefore pleaded in the alternative, in the event any contractual or other remedy is found unavailable. The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less, measured as of the time the suit is brought or, according to the circumstances, as of the time the judgment is rendered.

74. If Smithson successfully avoids any contractual obligation, she was nonetheless enriched without cause through: (a) access to *Forsaken*'s confidential development infrastructure and trade secrets; (b) compensation, recognition, and professional advancement received in connection with her work on *Forsaken*; and (c) any commercial or personal advantage derived from her unauthorized disclosure of *Forsaken*'s Confidential Information.

75. Plaintiffs were correspondingly impoverished by providing Smithson with access to their confidential trade secrets and development resources, and by suffering the resulting losses in competitive advantage, revenue, and business goodwill.

76. There is a direct causal connection between Smithson's enrichment and Plaintiffs' impoverishment, and there is no legal justification for Smithson's enrichment. Plaintiffs are entitled to recover the amount of Smithson's unjust enrichment or their corresponding impoverishment, whichever is less.

**X.**

**SIXTH CLAIM FOR RELIEF**
**Unfair Trade Practices**

77. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

78. This claim is asserted under Louisiana law, over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

79. The Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. Rev. Stat. §51:1405(A), declares unlawful all unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

80. Plaintiffs conduct trade or commerce in connection with *Forsaken*, generating substantial revenue through commercial activities on the Roblox platform.

81. Smithson's conduct constitutes unfair methods of competition and unfair or deceptive acts or practices within the meaning of LUTPA. Louisiana courts hold that LUTPA prohibits conduct that is egregious and involves elements of fraud, misrepresentation, deception, or other unethical conduct.

82. Smithson:

　　a. either made repeated and deliberate misrepresentations as to her age and legal capacity to induce Plaintiffs to grant her access to confidential business information or misrepresented her age when confronted with her conduct;

b. systematically misappropriated Plaintiffs' confidential business information and trade secrets;

c. disclosed this information to competitors, the public, and third parties who can use it to compete against or otherwise harm Plaintiffs; and

d. undermined the competitive advantages Plaintiffs developed through substantial investment of time and resources.

83. These acts are immoral, unethical, oppressive, and unscrupulous, and cause substantial harm to Plaintiffs' business interests that outweighs any conceivable benefit to Smithson or the public.

84. As a direct and proximate result of Smithson's unfair trade practices, Plaintiffs have suffered ascertainable losses of money and property in amounts to be proven at trial.

85. Pursuant to La. R.S. §§51:1409, Plaintiffs have mailed a copy of this complaint to the Louisiana Attorney General as of the date of this filing.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Eli Adams and Reyna Balboa respectfully request that the Court enter judgment in their favor and against Defendant Kaelen Smithson as follows:

- Awarding stipulated damages under Section 7 of the Confidentiality Agreement, or alternatively actual and consequential contract damages, in such amounts as are reasonable under the premises and proven at trial;

- Awarding damages under DTSA for actual loss, unjust enrichment, or reasonable royalty in an amount to be proven at trial plus exemplary damages and attorney fees to the extent permitted by law;

- Awarding damages under LUTSA for actual losses or alternatively unjust enrichment damages as a result of Defendant's trade secret misappropriation in an amount to be proven at trial and attorney fees to the extent permitted by law;

- An award of damages in amounts to be proven at trial, for all damages caused by Plaintiffs' reasonable reliance upon Defendant's fraudulent and intentional misrepresentations, including all expenses incurred and damages suffered in reliance upon Defendant's representations;

- An award equal to the amount of Defendant's unjust enrichment or Plaintiffs' corresponding impoverishment, whichever is less, in amounts to be proven at trial;

- An award of actual damages, and where applicable, three times the actual damages sustained following the requisite Attorney General notice, together with reasonable attorneys' fees and costs, pursuant to La. R.S. 51:1409(A);

- Awarding exemplary damages under the DTSA for willful and malicious misappropriation;

- Permanent Injunctive relief pursuant to Section 7 of the Confidentiality Agreement, 18 U.S.C. § 1836(b)(3)(A), and La. R.S. § 51:1432, enjoining Defendant from further using or disclosing Plaintiffs' confidential information and trade secrets;

- Awarding reasonable attorney fees and costs;

- Awarding prejudgment and post judgment interest at the maximum rate permitted by law; and

- All other and further relief, legal, equitable, or otherwise, as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,
**DAVILLIER LAW GROUP, LLC**

/s/Jonathan D. Lewis
Charles F. Zimmer II (LSBA No. 26759)
Jonathan D. Lewis (LSBA No. 37207)
935 Gravier Street, Suite 1702
New Orleans, LA  70112
Phone: 504-582-6998 | Fax: 504-582-6985
Email: ddavillier@davillierlawgroup.com
        czimmer@davillierlawgroup.com
        jlewis@davillierlawgroup.com

and

**MARKOWITZ HERBOLD PC**
Joseph M. Levy, *Pro Hac Vice Forthcoming*
Shelby Stepper, *Pro Hac Vice Forthcoming*
1455 SW Broadway, Suite 1900
Portland, OR  97201
Telephone: (503) 295-3085

*Attorneys for Plaintiffs*